UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WESTFIELD NATIONAL INSURANCE COMPANY,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>WAYNEDALE APARTMENTS, INC.,  )<br>d/b/a WAYNEDALE 1 APARTMENTS;  )<br>LAFRAYE BANKS; and  )<br>MARC REPROGLE,  )<br>  )<br>Defendants.  ) | Case No. 1:18-cv-00051 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Westfield National Insurance Company ("Westfield"), by counsel, for its cause of action against the Defendants, alleges and states the following:

## I.  PARTIES AND JURISDICTION

**1.1** Plaintiff, Westfield, is an Ohio corporation with principal place of business and nerve center in Westfield Center, Ohio. At all times material hereto, Westfield was duly authorized to transact the business of insurance within the State of Indiana.

**1.2** Defendant, Waynedale Apartments, Inc. d/b/a Waynedale 1 Apartments ("Waynedale") is an Indiana corporation with principal place of business and nerve center in Allen County, Indiana.

**1.3** Defendant, LaFraye Banks ("Banks") is a citizen of the State of Indiana who resides in Allen County, Indiana.

**1.4** Defendant, Marc Reprogle ("Reprogle") is a citizen of the State of Indiana who resides in Allen County, Indiana.

**1.5** Westfield delivered the insurance policy at issue to its named insured, Waynedale, in Allen County, Indiana.

**1.6** The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

**1.7** Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §1332(a).

**1.8** Venue lies in this Court pursuant to 28 U.S.C. §1391(b).

**1.9** This Court has personal jurisdiction over Waynedale, Banks and Reprogle.

## II.     FACTS CONCERNING REPROGLE

**2.1** Westfield incorporates herein by reference the allegations contained within rhetorical paragraphs 1.1 through 1.9 of this Complaint.

**2.2** Waynedale owns a multi-unit apartment complex located at 7520 Ideal Avenue, Fort Wayne, Indiana, 46809 (the "Complex").

**2.3** On March 10, 2014, Waynedale leased Apartment No. 3 of the Complex to Reprogle.

**2.4** On June 1, 2016, Reprogle complained to Waynedale that his air conditioning was not working.

**2.5** On June 9, 2016, Reprogle complained to Waynedale that his air conditioning was not working.

**2.6** On August 10, 2016, Reprogle complained to Waynedale that his air conditioning was not working.

**2.7** On January 6, 2017, Reprogle complained to Waynedale that his heat was not working.

**2.8** On January 30, 2017, Waynedale issued its "Notice of Lease Violation" to Reprogle, which read, in relevant part, as follows:

> You have not been reporting maintenance repairs appropriately instead you have been calling the contractor directly regarding your heat. In doing so you are interfering with the management of the apartments. As you know the proper procedure is to report maintenance requests to management and the contractor will be called as needed. Your failure to follow proper

**2.9** On March 6, 2017, Reprogle filed a "Housing Discrimination Complaint" against Waynedale, Waynedale employee, Charlene K. Jones, and Justus, employee, Sherry Herder, with the Fort Wayne Metropolitan Human Relations Commission, alleging as follows:

> I am a qualified tenant with a disability who is currently living at Waynedale I Apartments. Since June of 2016, I have not had a functioning furnace/air conditioning unit in my apartment. It stopped working shortly after I told the property manager that a neighbor needed a grab bar in her apartment because of her disabling condition. Since that time, maintenance and HVAC professional have been in my apartment but I have not had heat for the entire winter. I have made repeated requests both in writing and verbally, but nothing has changed.
>
> I believe that management is not making these necessary repairs to my apartment because of my disability and because in retaliation for complaining on behalf of a neighbor with a disability. This is in violation of Section 804(f) and Section 818 of the Fair Housing Act of 1968, as amended and Fort Wayne Ordinance G-33-92, as amended.

**2.10** On March 17, 2017, Reprogle complained to Waynedale that: "please turn my heat on, it has been off since last summer".

3

**2.11.** On June 21, 2017, the Fort Wayne Metropolitan Human Relations Commission issued its decision concluding that Waynedale had not discriminated against Reprogle on the basis of his disability.

### III.     FACTS CONCERNING BANKS

**3.1** Westfield incorporates herein by reference the allegations contained within rhetorical paragraphs 2.1 through 2.11 of this Complaint.

**3.2** On January 22, 2014, Waynedale leased Apartment No. 23 of the Complex to LaFraye Banks ("Banks").

**3.3** On July 27, 2015, Waynedale issued a "Notice of Lease Violation" to Banks which read as follows:

> Your brothers were at apartment #3 curing at the resident and being loud and boisterous. This behavior disturbed staff as well as other tenants. When asked to leave the building, they refused and continued harassing the tenant. You are responsible for your company and are supposed to escort them from the building when they get ready to leave so that this type of disturbance will not occur. We cannot tolerate such inappropriate behavior and any further disturbance of this nature will result in termination of your tenancy.

**3.4** In early July of 2016, Banks requested that Waynedale install suction cup grab bars for the bathtub in her apartment. Waynedale deemed the suction cup grab bars to be unsafe, and ordered grab bars which are mounted to the bathtub.

**3.5** On July 6, 2016, Waynedale issued a "Notice of Lease Violation" to Banks which read as follows:

> Allowing your boyfriend, Orlando, to visit when you were told that he was not allowed on the property. Allowing your company to wander the building unaccompanied by you. The House Rules states that your visitors must be accompanied by you. Your company has been wandering the building disturbing other tenants.

4

> Everyone has a right to live peaceably in their own apartment and your company has been disturbing that peace. Please cooperate in this matter to avoid termination of your tenancy.

3.6     On July 7, 2016, Waynedale installed grab bars which were mounted to the bath tub in Banks' apartment.

3.7     On January 30, 2017, Waynedale issued a "Notice of Lease Violation" to Banks which read as follows:

> You have once again allowed access to an individual who is not allowed on the property. This interferes with the rights of other to live peaceably in their apartments and is also a safety issue. Any further violations of this nature will result in termination of your tenancy.

3.8     On March 6, 2017, Banks filed a Housing Discrimination Complaint" with the Fort Wayne Human Relations Commission which alleged as follows:

> I am a qualified individual with disability who has lived at Waynedale Apartments since 2014. Property Manager, Charlene Jones ("Jones") has issued me three (3) write ups which are undeserved. I have been told if I receive another write up I will be evicted from my apartment. I have made Waynedale Apartments aware of my disabilities, and I believe my disabilities are the reason Jones has given me the unwarranted write ups as a means to evict me.
>
> For these reasons, I feel I have been subjected to different terms and conditions, and housing is being made unavailable to me, due to my disability in violation of section(s) 804(f)(1) and 804(f)(2)(A) of the Fair Housing Act of 1968, as amended and Fort Wayne Ordinance G-33-92, as amended.

3.9     On  June 6, 2017, the Fort Wayne Metropolitan Human Relations Commission issued its decision concluding that Waynedale had not discriminated against Banks on the basis of her disability.

3.10    On August 21, 2017, Waynedale issued a "Notice to Terminate Lease" to Banks which read, in relevant part, as follows:

> On July 6, 2016 & January 30, 2017, you were notified that the following problems and/or conditions must be correct within ten (10) days: Summary of the violations & Problems: You continue to allow your boyfriend, Orlando, to visit you when you have been told on several occasions that he is not allowed on the property. He has been coming through the side door and has been going through your window to avoid detection. We can no longer tolerate your blatant disregard for the rules.
>
> As of this date, you have continued in violation and/or not satisfactorily corrected the problem(s) and/or condition(s). There for, this Notice is to advise you that your Lease with Waynedale Apartments will terminate on September 20, 2017. You must vacate the apartment no later than the above lease termination date. If you remain in the apartment beyond the termination date, judicial eviction proceedings will commence to enforce termination and you may be required to pay all legal costs incurred by us in the process of evicting you.

**3.11** On August 28, 2017, Banks filed a "Housing Discrimination Complaint" against Waynedale, alleging as follows:

> I am a qualified individual who has resided at Waynedale Apartments since 2014. In March 2017, I filed a complaint of housing discrimination against Waynedale Apartments with the Fort Wayne Metropolitan Human Rights Commission. On August 21, 2017, I received a notice that my lease would be terminated for alleged lease violations.
>
> For these reasons, I believe that I have been retaliated against in violation of Section 818 of the Fair Housing Act of 1968, as amended and Fort Wayne Ordinance G-33-92, as amended.

## IV    THE LAWSUIT

**4.1** Westfield incorporates herein by reference the allegations contained within rhetorical paragraphs 2.1 through 2.11 of this Complaint.

**4.2** November 10, 2017, Banks and Reprogle filed their "Complaint for Damages and Jury Demand" (the "Complaint") in the following legal proceedings: "*LaFraye Banks and Marc Reprogle, Plaintiffs, vs. Waynedale 1 Apartments,*

6

*Defendant*", Cause No. 02D09-1711-CT-000601, Allen County Superior Court No. 9 (the "Lawsuit").

4.3     A true and correct copy of the Lawsuit's Complaint is attached hereto as Exhibit "1", and is incorporated herein by reference.

4.4     The Complaint proceeds against Waynedale on a theory of discrimination in housing under the Fair Housing Act ("FHA") and Fort Wayne local ordinances based upon Banks' and Reprogle's disabilities.

4.5     The Complaint proceeds under 42 U.S.C. § 3604, which reads, in relevant part, as follows:

> **Discrimination in the sale or rental of housing and other prohibited practices**
>
> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful –
>
> **(a)**   To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise to make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> **(b)**   To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
> \* \* \* \* \*
>
> **(f)**   **(1)**   To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of –
>
> > **(A)**   that buyer or renter,

7

    **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

    **(C)** any person associated with that buyer or renter.

  **(2)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of –

    **(A)** that person;

    **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

    **(C)** any person associated with that person.

**4.6** The Complaint also proceeds under 42 U.S.C. § 818, which reads, in relevant part, as follows:

> **Interference, coercion, or intimidation**
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

**4.7** The Complaint also proceeds under Fort Wayne Ordinance § 93.081, which reads as follows:

> **DISCRIMINATION IN CONNECTION WITH SALE OR RENTAL OF DWELLINGS PROHIBITED; EXCEPTION.**
>
> (A) A person many not refuse to sell or to rent after the making of a bona fide offer, refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of race, color, religion, sex, familial status, handicap, or national origin.

8

    (B)    A person may not discriminate against any person in the terms, conditions, or privileges of sale or rental of dwelling, or in providing services or facilities in connection with the sale or rental of a dwelling, because of race, color, religion, sex, familial status, handicap, or national origin.

    (C)    This subchapter does not prohibit discrimination against a person because the person has been convicted under federal law or the law of any state of the illegal manufacture or distribution of a controlled substance.

**4.8** The Complaint also proceeds under Fort Wayne Ordinance § 93.085, which reads, in relevant part, as follows:

**HANDICAPPED PERSONS.**

A person may not discriminate in the sale or rental or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of:

(A)    The buyer or renter;

(B)    A person residing in or intending to reside in the dwelling after the dwelling is sold, rented, or made available; or

(C)    (1)    Any person associated with the buyer or renter.

        (2)    A person may not discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a handicap of:

            (a)    The person;

            (b)    A person residing in or intending to reside in the dwelling after the dwelling is sold, rented or made available; or

            (c)    Any person associated with the person.

        (3)    For the purpose of this division only, DISCRIMINATION includes the following:

(a) A refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by the person if the modifications may be necessary to afford the person full enjoyment of the premises.

4.9 Finally, the Complaint proceeds under Fort Wayne Ordinance § 93.088, which reads as follows:

**COERCION, INTIMIDATION, THREATS, OR INTERFERRENCE.**

A person may not coerce, intimidate, threaten, or interfere with any other person:

(A) In the exercise or enjoyment of any right granted or protected by this subchapter; or

(B) Because the person has exercised or enjoyed, or has encouraged another person in the exercise or enjoyment of, any right granted or protected by this subchapter.

4.10 The Complaint alleges that because of Waynedale's discrimination, Banks and Reprogle suffered mental stress, humiliation, embarrassment and other damages and injuries, and seeks to recover compensatory damages, punitive damages, attorney's fees and costs.

4.11 On or about December 4, 2017, Waynedale provided Westfield with a copy of the Complaint, and requested that Westfield defend/indemnify Waynedale against the Lawsuit under the following policy of insurance: Westfield's Commercial Package Policy No. TRA 5 282 917, issued to Waynedale as the named insured, with effective dates of coverage of February 16, 2017, to February 16, 2018 (the "Policy").

4.12 A true and correct copy of the Policy is attached hereto as Exhibit "2", and is incorporated herein by reference.

10

**4.13** By correspondence dated January 15, 2018, Westfield denied coverage for the Complaint, and declined to defend Waynedale against the Lawsuit.

## V. COVERAGE DISPUTE – THE POLICY'S CGL BI/PD COVERAGE

**5.1** Westfield incorporates herein by reference the allegations contained within rhetorical paragraphs 4.1 through 4.13 of this Complaint.

**5.2** The Policy's Commercial General Liability ("CGL") Bodily Injury And Property Damage Liability ("BI/PC") coverage insuring agreement reads, in relevant part, as follows:

> *a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*
>
> > *(1)  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and*
> >
> > *(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*
>
> *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.*
>
> *b.  This insurance applies to "bodily injury" and "property damage" only if:*

  *(1)* The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

  *(2)* The "bodily injury" or "property damage" occurs during the policy period; and

  *(3)* Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew prior to the policy period, that "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * * * *

 *d.* "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  *(1)* Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  *(2)* Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  *(3)* Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 **5.3** The three (3) "Notice of Lease Violations" of which Banks complains were issued by Waynedale to Banks prior to the February 16, 2017, inception date of the Policy:  July 27, 2015; July 6, 2016; and January 30, 2017.

**5.4**     Assuming, arguendo, that the issuance of the "Notice of Lease Violations" qualifies as either "bodily injury" or "property damage", the same did not occur during the effective dates of the Policy.

**5.5**     Waynedale installed the grab bars to the bath tub in Banks' apartment on July 7, 2016.  As such, any failure on the part of Waynedale to respond to Banks' requests for installation of the grab bars also occurred in advance of the February 16, 2017, inception date of the Policy.

**5.6**     Several of Reprogle's complaints that the heat and air conditioning in his apartment were not working pre-dated the February 16, 2017, inception date of the Policy:  June 1, 2016; June 9, 2016; August 10, 2016; and January 6, 2017.

**5.7**     Assuming, arguendo, the lack of heat and air conditioning in Reprogle's apartment qualifies as either "bodily injury" or "property damage", any such lack of heat and air conditioning which pre-dates February 16, 2017, did not occur during the effective dates of the Policy.

**5.8**     Assuming, arguendo, that the issuance of the "Notice of Lease Violations" qualifies as "bodily injury" or "property damage", then Waynedale knew about the same prior to the February 16, 2017, inception date of the Policy, and Banks' claims associated with the same are subject to the "known damage" provisions in the Policy's CGL BI/PD coverage insuring agreement.

**5.9**     Assuming, arguendo, that the absence of a functioning heating/air conditioning unit qualifies as "bodily injury" or "property damage", then Waynedale knew about the same prior to the February 16, 2017, inception date of the Policy, and

13

Reprogle's claims associated with the same are subject to the "known damage" provision in the Policy's CGL BI/PD coverage insuring agreement.

5.10   Banks' and Reprogle's claim for punitive damages does not involve damages because of "bodily injury" or "property damage".

5.11   Banks' and Reprogle's claim for attorney's fees does not qualify as "damages" because of covered "bodily injury" or "property damage".

5.12   The Policy's "Commercial General Liability Expanded Endorsement" (the "CGLEE") defines the term "bodily injury" as follows:

> *"Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".*

5.13   The Complaint does not allege "bodily injury".

5.14   The Policy's CGL coverage defines the term "property damage", in relevant part, as follows:

> *"Property damage" means:*
>
> *a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
>
> *b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*
>
> *\* \* \* \* \**

5.15   The Complaint does not allege "property damage".

5.16   The Policy's CGL coverage defines the term "occurrence" as follows:

> *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

**5.17**   The Complaint does not allege an "accident" or "occurrence".

**5.18**   The Policy's CGLEE includes an "expected or intended injury" exclusion which reads as follows:

> *This insurance does not apply to:*
>
> **a.   Expected Or Intended Injury**
>
> > *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.*

**5.19**   The Complaint is subject to the Policy's CGL BIL/PD coverage "expected or intended injury" exclusion.

**5.20**   It would be against Indiana public policy for Waynedale to insure itself under the Policy's CGL BI/PD coverage against Banks' and Reprogle's punitive damage claims.

## VI.   COVERAGE DISPUTE – THE POLICY'S CGL PAI COVERAGE

**6.1**   Westfield incorporates herein by reference the allegations contained within rhetorical paragraphs 5.1 through 5.20 of this Complaint.

**6.2**   The Policy's CGL Personal And Advertising Injury ("PAI") covering insuring agreement reads as follows:

> **a**.   *We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any*

15

> "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may at our discretion investigate any offense and settle any claim or "suit" that may result.  But:
>
> *(1)*   The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and
>
> *(2)*   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> **b.**   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**6.3**   The three (3) "Notice of Lease Violations" of which Banks complains were issued by Waynedale to Banks prior to the February 16, 2017, inception date of the Policy:  July 27, 2015; July 6, 2016; and January 30, 2017.

**6.4**   Assuming, arguendo, that the issuance of the "Notice of Lease Violations" qualifies as a "personal and advertising injury", the same did not occur during the effective dates of the Policy.

**6.5**   Waynedale installed the grab bars to the bath tub in Banks' apartment on July 7, 2016.  As such, any failure on the part of Waynedale to respond to Banks' requests for installation of the grab bars also occurred in advance of the February 16, 2017, inception date of the Policy.

**6.6** Several of Reprogle's complaints that the heat and air conditioning in his apartment were not working pre-dated the February 16, 2017, inception date of the Policy: June 1, 2016; June 9, 2016; August 10, 2016; and January 6, 2017.

**6.7** Assuming, arguendo, the lack of heat and air conditioning in Reprogle's apartment qualifies as a "personal and advertising injury", any such lack of heat and air conditioning which pre-dates February 16, 2017, did not occur during the effective dates of the Policy.

**6.8** Banks' and Reprogle's claim for punitive damages does not qualify as damages because of a "personal and advertising injury".

**6.9** Banks' and Reprogle's claim for attorney's fees, costs and expenses does not qualify as damages because of a "personal and advertising injury".

**6.10** The Policy's CGL coverage form, as modified by the CGLEE, defines the term "personal and advertising injury" as follows:

> *"Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:*
>
> *a.* *False arrest, detention or imprisonment;*
>
> *b.* *Malicious prosecution;*
>
> *c.* *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;*
>
> *d.* *Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*
>
> *e.* *Oral or written publication, in any manner, of material that violates a person's right of privacy;*
>
> *f.* *The use of another's advertising idea in your "advertisement"; or*

17

  *g*. *Infringing upon another's copyright, trade dress or slogan in your "advertisement".*

  *h*. *Discrimination or humiliation that results in injury to the feelings or reputation of a natural person but only if such discrimination or humiliation is:*

   *(1)* *not done intentionally by or at the direction of:*

    *(a)* *The insured; or*

    *(b)* *Any "executive officer", director, stockholder, partner, member or manager (if you are a limited liability company) of the insured; and*

   *(2)* *Not directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person or persons by any insured.*

**6.11** The Complaint does not allege a "personal and advertising injury".

**6.12** The Policy's CGL PAI coverage form contains the following exclusion:

*This insurance does not apply to:*

  **a.** ***Knowing Violation Of Rights Of Another***

   *"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".*

**6.13** The Complaint is subject to the Policy's CGL PAI "knowing violation of the rights of another" exclusion.

**6.14** The Policy's CGLEE contains the following exclusion:

*This insurance does not apply to:*

* * * * *

  *q.* ***Discrimination Relating To Room, Dwelling or Premises***

18

> *Caused by discrimination directly or indirectly related to the sale, rental, lease or sub-lease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured.*

(the "Housing Discrimination Exclusion").

**6.15** The Complaint is subject to the Policy's CGL PAI coverage Housing Discrimination Exclusion.

**6.16** It would be against Indiana public policy for Waynedale to insure itself under the Policy's CGL PAI coverage against Banks' and Reprogle's punitive damage claims.

## VII. THE CONTROVERSY AND DEMAND FOR RELIEF

**7.1** Westfield incorporates herein by reference the allegations contained within rhetorical paragraphs 6.1 through 6.16 of this Complaint.'

**7.2** An actual controversy exists between the parties hereto concerning whether Westfield has a duty under the Policy to defend Waynedale against the Lawsuit:

**(a)** Waynedale contends that Westfield has a duty under the Policy to defend Waynedale against the Lawsuit;

**(b)** Westfield contends that it has no duty under the Policy to defend Waynedale against the Lawsuit; and

**(c)** Banks and Reprogle have been joined in this action by virtue of their interest in the resolution of the duty to defend issue.

**7.3** An actual controversy exists between the parties hereto concerning whether Westfield has a duty under the Policy to indemnify Waynedale against the Lawsuit:

**(a)** Waynedale contends that Westfield has a duty under the Policy to indemnify Waynedale against the Lawsuit;

19

**(b)** Westfield contends that it has no duty under the Policy to indemnify Waynedale against the Lawsuit; and

**(c)** Banks and Reprogle have been joined in this action by virtue of their interest in the resolution of the duty to indemnify issue.

**WHEREFORE**, Westfield respectfully requests the following relief:

**A.** That the Court declare that Westfield has no duty under the Policy to defend Waynedale against the Lawsuit;

**B.** That the Court declare that Westfield has no duty under the Policy to indemnify Waynedale against the Lawsuit;

**C.** Costs; and

**D.** Such further relief as the Court deems just and proper.

Respectfully Submitted,

SMITH FISHER MAAS HOWARD & LLOYD, P.C.

/s/ Mark R. Smith
MARK R. SMITH, 2115-49

SMITH FISHER MAAS HOWARD & LLOYD, P.C.
7209 North Shadeland Avenue
Indianapolis, Indiana  46250
Phone:  (317) 578-1900
Facsimile:  (317) 578-1330
E-Mail:  msmith@smithfisher.com
Attorneys for Plaintiff, Westfield National Insurance Company

Q:\WES-1268\PleadingsCOMPLAINT FOR DJ    WES-1268